

U.S. Department of Justice

Antitrust Division

*New York Office*

| | |
|---|---|
| *26 Federal Plaza* | *212/335-8035* |
| *Room 3630* | |
| *New York, New York 10278-0004* | *FAX 212/335-8023* |

August 28, 2015

**BY ECF**

The Honorable Cathy L. Waldor
United States Magistrate Judge
Martin Luther King Building
50 Walnut Street
Newark, NJ 07101

       Re:  United States v. John A. Bennett, No. 09 Cr. 656 (SDW)

Dear Judge Waldor:

       The government submits this letter in opposition to the defendant's renewed request to modify his bail conditions to allow him to return to Canada. The current request seeks his return to Canada to reside there pending trial. It is uncontested that if the defendant is allowed to travel to Canada and does not return, there is no mechanism under the treaty between the United States and Canada—short of a second extradition proceeding—to obtain jurisdiction over the defendant. The defendant remains a significant risk of flight to Canada. As such, consistent with this Court's prior rulings and the recommendation of the Supervising Office of the United States Pre-Trial Services in the District of New Jersey, the government respectfully urges the Court to deny the defendant's request.

       **I.**       **A Second Extradition Will Be Necessary to Obtain Jurisdiction Over the Defendant If He Is Permitted to Return to Canada and Fails to Return to the United States**

       As this Court is aware, the government has been and remains extremely concerned that if the defendant were permitted to return to Canada, the United States would lose jurisdiction over him permanently or, at a minimum, incur significant additional delays in bringing justice in this case. As set forth in detail below, based on our communications with the Canadian government, it is clear that upon the defendant's failure to return to the United States from Canada: (1) the United States would have to initiate a new extradition proceeding by making a new request to the Canadian Minister of Justice for the defendant's extradition; (2) the Minister of Justice may refuse to accept a new extradition request particularly if, after the considerable resources and

time already expended by the Canadians to extradite him, the United States permitted him to return to Canada within months of his extradition; (3) the new extradition, if authorized, would take two to five years to secure as the defendant would have all of the rights and avenues of appeal in the new extradition process as he did in the first; and (4) the defendant would likely be free during the lengthy extradition process.

### a. A Second Extradition Is Not Certain and Would Result in a Significant, Several-Year Delay in This Case

According to Director General Janet Henchey of the International Assistance Group (IAG) at the Canadian Department of Justice, who has been "responsible for approving, monitoring and advising the Minister of Justice on all extradition requests to and from Canada" for the last six years,:

> *[A] second request for extradition may not be accepted and if accepted may not be successful. If the request is successful, it will likely take from 2 to 4 years to secure Mr. Bennett's return to the United States.*

*See* Letter from Janet Henchey, Dir. Gen., Int'l Assistance Grp., to Lisa Roberts, Acting Assoc. Dir., Office of Int'l Affairs (Aug. 24, 2015) ("Dir. Gen. Henchey Letter") at 3 (Exhibit A) (emphasis added). Director General Henchey's conclusion, based on her position, her extensive experience in Canadian extradition law,[1] and her familiarity with the defendant's case, clearly shows the unjustified risk associated with allowing the defendant to return to Canada, particularly with an impending trial scheduled for February 22, 2016.[2]

As noted in the government's January 30, 2015 letter to this Court ("Government's January 30 Letter"), if the defendant is permitted to travel to Canada and then fails to return to the United States, Canada would not be able to have him immediately re-extradited to the United States based on the previous surrender order. Under Canadian law, once a person sought for extradition has been surrendered, the order of surrender has been spent and can no longer be relied upon. As a result, the United States would not be able to rely on its original extradition request to have the defendant re-extradited. Rather, the United States would have to make a new request to Canada for his extradition. *See* Government's January 30 Letter, at 3 (Exhibit B); *see also* Dir. Gen. Henchey Letter, at 1.

---

[1] Prior to becoming Director General, Director General Henchey had been Associate Director of the IAG where she was "responsible for reviewing all advice to the Minister of Justice with respect to his decision on surrender in extradition cases" and has "practised as a criminal lawyer in Canada for over 25 years, including representing the Attorney General of Canada in numerous extradition hearings and extradition appeals in the Canadian courts." Dir. Gen. Henchey Letter, at 1

[2] The trial in this case, which was scheduled to begin November 9, 2015, was adjourned at the defendant's request shortly before the instant bail modification request.

### b. It Is Not Certain that the Canadian Minister of Justice Would Even Authorize a Second Extradition of the Defendant to the United States

The United States may not be able to secure a second extradition of the defendant. The Canadian Minister of Justice may not authorize a second extradition, particularly given how recently the United States obtained jurisdiction over the defendant and the resources expended by the Canadian government in litigating the extradition through every level of the Canadian court system, including the Supreme Court of Canada. *See* Government's January 30 Letter, at 3. In particular, according to Director General Henchey,

> Upon receiving the new request, the Minister of Justice would have to consider whether it was in the public interest to accept the request and refer it to the courts. In making that decision he would take into account the fact that Mr. Bennett was released on bail in the United States and permitted to return to Canada after the Canadian government had already expended considerable government resources, including valuable court time, over the course of 4 years to extradite Mr. Bennett to the United States. While I am unable to predict the outcome of the Minister's discretionary decision-making, I can advise that it would be open to him to refuse to accept a new extradition request in these circumstances.

Dir. Gen. Henchey Letter, at 2. The defendant's claim that extradition and surrender is "virtually certain" is based on the personal opinion of his attorney in Canada who merely states "it is my opinion that there is a near-certainty that extradition would be approved by the Minister of Justice." Delbigio Declaration, attached to Letter from Robert Anello, Esq. to the Court (Aug. 11, 2015) ("Defense Bail Letter"), at 2. While his Canadian counsel is "unaware of any basis upon which the Minister of Justice would decline to authorize a second extradition" on the same offenses if the defendant failed to return as required, *id.*, Director General Henchey's statements cast serious doubt as to the likelihood the Minister of Justice would authorize a second extradition.

### c. Assuming an Extradition Is Even Authorized, It Is Likely the Defendant Would Be Granted Bail During the Pendency of an Extradition and It Is Certain that He Would Be Afforded Every Right Under Canadian Law to Pursue All Avenues of Appeal

The defendant's entire argument in support of his modification request rests on the unsupported statement that he "would have no incentive whatsoever to again fight extradition in Canada" because "there is virtually no chance that Mr. Bennett would be granted bail in the time period before he was extradited," and therefore he "would be incarcerated for the duration of any extradition proceeding." Defense Bail Letter, at 4-5. To the contrary, the defendant has every incentive to return to Canada where he would likely remain free on bail throughout the pendency of a lengthy extradition process, assuming one is even authorized, as is clear from Director General Henchey's letter. In her letter, she explains:

3

> I can further advise that, should the Minister accept a new extradition request and authorize the commencement of extradition proceedings, Mr. Bennett will have all of the rights which he had, under Canadian law, when his extradition was originally sought. His case would be referred to the superior court of the relevant province for an extradition hearing. At that time Mr. Bennett would have the opportunity to apply for bail pending the hearing. There is no way to predict the outcome of such a bail application as the decision is within the sole discretion of the judge presiding at the bail hearing. I can advise that *it would be unusual to detain in custody an elderly person who is not accused of violent crimes*.
>
> Regardless of the outcome of the bail hearing, it is likely that it would take approximately a year for the matter to be heard by the courts. Mr. Bennett will have the opportunity to challenge the evidence and to bring preliminary motions, which could result in more lengthy court proceedings.
>
> Ultimately, [in] light of the fact that the evidence was previously found to be sufficient, if there are no changes in circumstances, Mr. Bennett will likely be committed for extradition.
>
> Following an extradition hearing, the request for extradition would be referred back to the Minister of Justice to make a decision on surrender. I note that Mr. Bennett [is] currently approximately 80 years old and seeking to return to Canada for a medical procedure. In my view, *there is a significant risk that Mr. Bennett's age and health circumstances could act as a barrier to his re-surrender to the United States*.
>
> Moreover, even if the Minister orders his surrender, Mr. Bennett will be able to appeal the committal decision and apply to judicially review the decision of the Minister of Justice to the court of appeal. Should his surrender be upheld in the court of appeal, Mr. Bennett can apply for leave to appeal to the Supreme Court of Canada.

Dir. Gen. Henchey Letter, at 2 (emphasis added).

The defendant has already availed himself of every possible avenue of appeal in Canada to contest his extradition. The government has every reason to believe that, given the opportunity, he would do so again in order to remain in Canada for as long as possible. The case against the defendant is strong and supported by multiple witnesses and considerable documentary evidence. Judge Wigenton has imposed significant sentences of 60- and 120-months on his co-conspirator Gordon McDonald on the same two counts of the Indictment. The defendant has strong incentives to avoid a trial in this case by returning to Canada and forcing the United States and Canada to pursue a second extradition.

## II. It Is Uncontested That an Anticipatory Waiver of Extradition Is Unenforceable

Under Canadian law, an anticipatory waiver of extradition is unenforceable. Director General Henchey confirms that "an anticipatory waiver has no force or effect under Canadian law and could not be used as a mechanism to expedite Mr. Bennett's removal to the United States should he choose to challenge his extradition from Canada." Dir. Gen. Henchey Letter, at 3. In an attachment to her letter, Director General Henchey explains the existing procedure under Canadian law:

> The *Extradition Act* has made no provision for an extradition judge to enforce a consent or waiver, or an intention to consent or waive extradition, made prior to the initiation of extradition proceedings in this country.
>
> If a person were to purport to enter into an anticipatory waiver of extradition as a condition of their bail on charges in a foreign state and then reneged on that undertaking upon arrival in Canada, there would be no mechanism in Canadian law to enforce the undertaking. An anticipatory waiver is not contemplated by the Act. Indeed, the lack of express statutory authority to enforce a prior undertaking to waive extradition would likely lead to extensive litigation in Canadian courts. Of course, whether a person accused or convicted of a crime outside of Canada can be trusted to honour the bail terms established by the foreign court is primarily an issue between that person and the foreign court.

Letter from Janet Henchey, Dir. Gen., Int'l Assistance Grp., to Mary Ellen Warlow, Dir., Office of Int'l Affairs, U.S. Dep't of Justice. (Jul. 17, 2014) (attached to Dir. Gen. Henchey Letter), at 2.

Neither defense counsel's August Bail Letter nor the attached declaration of the defendant's Canadian counsel contest the unenforceability of the anticipatory waiver. Rather, they speculate that the anticipatory waiver would "'almost certainly result in the denial of bail by a Canadian judge <u>during the pendency of any extradition proceeding</u>' and that 'there is near-certainty that Mr. Bennett would be incarcerated <u>during the duration of any subsequent extradition proceeding</u> …." Defense Bail Letter, at 4 (emphasis added). Defense counsel's assertions only provide further indications that a second, lengthy extradition would be necessary if the defendant is allowed to return to Canada pending trial.

### III. The Court Properly Denied the Defendant's Previous Requests to Return to Canada Given the Defendant's Risk of Flight and the Factors Set Forth in 18 U.S.C. § 3142(g)

On February 4, 2015, the Court properly denied the defendant's request to return to Canada for a medical procedure and clearly stated that:

> I set bail so that Mr. Bennett would not be able to go back to Canada. I've considered the 3142(g) factors I considered in setting bail. … And at this point my attention was clear that Mr. Bennett remain in the United States pending trial. I'm afraid that there is a flight risk in the respect that he's 80 years old. This surgery requires a week of pre-op and two weeks of post-op recovery. So that would be a three week absence from the United States and the original bail conditions. And because he's 80 years old there are potential complications and then a lengthy stay up until and including the trial time which was completely not my intention at all. . . . I do still think he's a flight risk. And I am somewhat unsettled in what would happen if he did in fact relocate or defect, if you will, to Canada.

Transcript of Bail Hearing at 2-3, *United States v. Bennett*, No. 09-cr-656 (D.N.J. Feb. 4, 2015) (Attached to Defense Bail Letter as Exhibit B).

Previously, on November 24, 2014, the Court similarly concluded that the defendant was a risk of flight and set the terms of his release to exclude any travel to Canada. *See* Transcript of Bail Hearing at 28-31, *United States v. Bennett*, No. 09-cr-656 (D.N.J. Nov. 24, 2014) (Attached to Defense Bail Letter as Exhibit A).

There have been no changes to the defendant's circumstances since this Court last reviewed the factors in February and denied the defendant's more limited request to travel back to Canada. As such, the government respectfully urges the Court to deny this request as well.

### IV. The Defendant Remains a Serious Risk of Flight to Canada Such that the Continued Restriction of His Travel to Within the United States Is Necessary

The defendant remains a serious risk of flight to Canada. Under the Bail Reform Act, the Court must impose "the least restrictive further condition, or combination of conditions, that . . . will *reasonably assure* the appearance of the person as required . . . ." 18 U.S.C. § 3142. The only means of reasonably assuring the defendant's appearance in this case is to maintain the defendant's presence in the United States, consistent with this Court's prior rulings. The defendant's claim that "Mr. Bennett would have *no* incentive to remain in Canada and fight extradition," Defense Bail Letter, at 4 (emphasis in original), is contrary to the facts before this Court. Indeed, the government can think of no incentive the defendant has *not* to remain in Canada. The defendant's letter speaks at length about his and his wife's medical conditions and the availability of healthcare in Canada; the presence of family and personal ties in Canada; and the defendant's business aspirations in Canada – not to mention this pending criminal case in the United States. These are weighty incentives that would encourage the defendant to remain in Canada, particularly given that he knows the extensive, lengthy procedure required for

extradition, and the possibility that he will not be extradited a second time. Accordingly, the defendant's risk of flight in this case is high, and he should not be allowed to return to Canada.

The only arguments the defendant makes to rebut this conclusion come from the declaration of his attorney in Canada that the defendant would be extradited again, and that he would be denied bail pending the extradition. These arguments are directly rebutted by the statements of Director General Henchey. As discussed at length above, extradition is not certain and detention pending extradition, assuming it is even authorized, is unlikely. Bail would be in the sole consideration of a Canadian superior court and there is no reason, other than his counsel's speculation, to think that any Canadian court would deny him bail. After all, he will simply be exercising his rights to fight a renewed request for extradition, and all of his family and personal ties will remain in Canada such that he would be unlikely to return to the United States. In addition, his age and the non-violent nature of the charges, would make it "unusual" for him to be detained. Dir. Gen. Henchey Letter, at 2. Likewise, the Canadian government has stated that it does not enforce bail conditions or obligations imposed by a foreign court. Therefore, there are no conditions this Court can set that will influence the proceedings in Canada. Consequently, the defendant's argument cannot provide this Court with the assurances it needs to permit the defendant to return to Canada.

### V. Additional Prolonged Delays Would Result in Significant Prejudice to the Government

Even if the defendant were successfully extradited from Canada following a second round of extradition proceedings, the delay created by that process would result in considerable prejudice to the government. As this Court is aware, the conduct at issue in this trial goes back as early as 2000, more than fifteen years. Further extradition proceedings and related litigation would stretch that gap even further. While the defendant has appropriately availed himself of his due process rights throughout the extradition proceedings, it is essential to the integrity of this case to proceed to trial in a timely fashion. Further delay in this case would prejudice the government's ability to proceed to trial inasmuch as witnesses' memories would fade and the case would lose relevance to the jury tasked with deciding the facts. For these reasons, the government, and the public, have a strong interest in preventing further and unnecessary delay in this case. The only way that the Court can properly protect these interests is by denying the defendant's request to return to Canada.

**VI.    Conclusion**

For all the reasons set forth above, the government respectfully urges that the Court maintain the defendant's current bail conditions and deny his request to return to Canada. To the extent that the Court is considering the defendant's bail modification request, the government respectfully requests a hearing.

Respectfully submitted,

/s/ Helen Christodoulou
Helen Christodoulou
Daniel Tracer
Mikhail Vanyo
Trial Attorneys
Antitrust Division


CC:   Robert Anello (counsel for John Bennett)
      Barbara Hutchinson (Pre-Trial Services, D.N.J.)
      Brenda Orantes (Pre-Trial Services, C.D.Ca.)