

**U.S. Department of Justice**

Antitrust Division

*New York Office*

26 Federal Plaza                                   212/335-8035
Room 3630
New York, New York 10278-0004        FAX 212/335-8023

January 30, 2015

**BY FEDERAL EXPRESS**
The Honorable Cathy L. Waldor
United States Magistrate Judge
Martin Luther King Building
50 Walnut Street
Newark, NJ 07101

      Re: <u>United States v. John A. Bennett</u>, No. 09 Cr. 656 (SDW)

Dear Judge Waldor:

  The government submits this letter in response to the defendant's request to modify his bail conditions to permit him to travel to Canada for medical care. The government opposes the defendant's request on the grounds that if he is allowed to travel to Canada for any reason and does not return, there is no mechanism under the treaty between the United States and Canada— short of a second lengthy extradition proceeding—to obtain jurisdiction over the defendant. Consistent with the recommendation of the United States Pre-Trial Services, the government respectfully urges the Court to deny the defendant's request and maintain the conditions set forth in the Court's December 9, 2014 Order Setting Conditions of Release.

 I. <u>Background</u>

  On August 31, 2009, the defendant was charged in two counts of a twelve-count indictment for his participation in a fraud and kickback conspiracy involving the award of multi-million dollar sub-contracts at the Federal Creosote Superfund site in Manville, New Jersey. In essence, the defendant is charged with conspiring to pay more than $1.1 million in kickbacks in exchange for the award of various sub-contracts to the defendant's company.

  Following his indictment, the defendant, a Canadian citizen, refused to submit to the jurisdiction of the United States and pursued all avenues of appeal, including to the Canadian Minister of Justice and the Supreme Court of Canada. After learning that the defendant would not submit to the jurisdiction of the United States, the government submitted a request for extradition to Canadian authorities in February 2010. The defendant's extradition hearing was initially scheduled for April 13, 2011, but was adjourned to address various requests by defense counsel until January 2012. On February 15, 2012, the Supreme Court of British Columbia

ordered the defendant's committal. The defendant then submitted a request to the Canadian Minister of Justice ("the Minister"). After reviewing the defendant's submissions, the Minister ordered him to surrender on August 24, 2012. The defendant appealed the Minister's initial surrender decision, but it was affirmed on May 3, 2013. The defendant then sought judicial review of the Minister's decision in the Court of Appeal for British Columbia, and that appeal was dismissed on April 14, 2014. As a final recourse, the defendant appealed to the Supreme Court of Canada. On October 30, 2014—more than five years after the defendant was indicted—the Supreme Court of Canada denied him leave to appeal and ordered the defendant's extradition to the United States. The defendant was ultimately extradited to the United States on November 14, 2014.

II. The Defendant Continues to Pose a Serious Risk of Flight Such that the Continued Restriction of His Travel to Within the United States is Necessary

After an initial bail hearing on November 24, 2014 and in response to the government's concerns regarding the defendant's serious risk of flight, the Court released the defendant "under the strictest of conditions," including home incarceration, twenty-four hour electronic monitoring, and a substantial bond package.[1] (Tr. at 28). In addition, the Court required the defendant to surrender all of his passports and restricted his travel to New Jersey, New York (Southern and Eastern Districts), and California (Central District), subject to the Court's approval.

Notwithstanding defense counsel's assertion that the defendant has complied with his release conditions in California, the government remains concerned that he poses a serious risk of flight and will not return to the United States if he is allowed to travel to Canada. None of the factors the Court reviewed have changed since the bail order was entered on December 9, 2014. The nature and circumstances of the offenses charged and the weight of the evidence remain unchanged. The defendant still lacks ties to the United States, as his family, his home, his assets, and his business are all based in Canada.

Although the Court previously indicated a willingness to allow the defendant to travel to Canada for medical care, the transcript from the November 24, 2014 hearing reflects that the Court intended to condition such a request on the approval of Pre-Trial Services. (Tr. at 29). Contrary to defense counsel's representation, Pre-Trial Services objects to the defendant's request to travel to Canada to obtain medical care as he remains a serious risk of flight. Supervising Pre-Trial Services Officer Barbara Hutchinson of the District of New Jersey informed the government and defense counsel of Pre-Trial Services position in advance of the defendant's application. It is our understanding that Officer Brenda Orantes of the Central District of California was not fully apprised of the history of this case or the position of the supervising office in New Jersey at the time she initially discussed the matter with defense counsel. After discussions with both officers, it is clear that Pre-Trial Services objects to the defendant's request to travel to Canada.

---

[1] A copy of the November 24, 2014 bail hearing transcript is attached as Exhibit A.

2

III. The United States Cannot Obtain Jurisdiction Over the Defendant Without a Second Extradition Should He Fail to Return to the United States Following Medical Care

Although the Court indicated a willingness to consider travel requests relating to medical care, there are serious legal and diplomatic ramifications in allowing the defendant to return to Canada under any circumstances. Based on recent discussions between the United States Department of Justice's Office of International Affairs and the Canadian government, it is clear that the United States would have to pursue a second extradition if the defendant were allowed to travel to Canada for medical care and failed to return.

According to the Canadian Department of Justice's International Assistance Group, if the defendant is permitted to travel to Canada and then fails to return to the United States, Canada would not be able to have him immediately re-extradited to the United States based on the previous surrender order. Under Canadian law, once a person sought for extradition has been surrendered, the order of surrender has been spent and can no longer be relied upon. As a result, the United States would not be able to rely on its original extradition request to have the defendant re-extradited. Rather, the United States would have to re-commence the process by making a new request for the defendant's extradition.

While Canada's Extradition Act contemplates a second request for extradition, whether the Minister of Justice would in fact authorize a second request or order the surrender of a person sought a second time is discretionary. If authorized, the request would have to proceed through the committal and surrender stages a second time in the Superior Court and before the Minister of Justice respectively. The defendant would be able to bring additional preliminary applications in resisting his committal a second time and he would also be entitled to make written submissions to the Minister of Justice a second time for refusing his surrender. The defendant would also be able to appeal his committal by the extradition judge and his surrender by the Minister of Justice as of right in the Provincial Court of Appeal and to seek leave to appeal to the Supreme Court of Canada from the Court of Appeal's decision. Thus, it is not a certainty that a second request for the defendant's extradition would be authorized, and if extradition proceedings were authorized, although it is unlikely that the proceedings would last an additional four plus years, it is not unlikely that the proceedings could last several years.

As noted above, the defendant has already availed himself of every possible avenue of appeal in Canada to contest his extradition. Given his extensive ties to Canada, the strength of the government's case, and the 60- and 120-month sentence already imposed on his co-conspirator Gordon McDonald on these two counts, the defendant has every incentive to remain in Canada and force the United States to attempt to file a second extradition request. The Court acknowledged this risk during the November 24, 2014 bail hearing, noting that that the Court did not want "anybody to have to go through [the extradition process] again." (Tr. at 31).

3

IV. <u>Travel to Canada is Not Necessary to Obtain Medical Care</u>

Although not relevant to the main issue before this Court - namely that the defendant is a serious flight risk such that travel to Canada is unwarranted, the defendant has failed to substantiate his claim that obtaining medical care in the United States is "astronomically expensive." Def.'s Letter at 2. Not only does defense counsel not offer support for the actual cost of the procedure in the United States, but they also fail to note that the defendant could obtain at least partial reimbursement from Canada for medical care rendered in the United States. According to the British Columbia Ministry of Health, the Canadian Medical Services Plan ("CMSP") provides partial reimbursement of medical expenses incurred outside of Canada. *See* Exhibit B. Defendant's assertions about the excessive costs are, at a minimum, premature without an indication of how much medical care in the United States would cost the defendant after reimbursement.

V. <u>Conclusion</u>

For all the reasons set forth above, the government respectfully requests that the Court deny the defendant's request to modify his bail conditions to permit him to travel to Canada for surgery and maintain the conditions set forth in the Court's December 9, 2014 Order Setting Conditions of Release.

Respectfully submitted,

Helen Christodoulou
Trial Attorney
Antitrust Division


CC: Robert Anello (counsel for John Bennett)